We'll hear argument next in Case 10-444, Missouri v. Frye. General Costner. Mr. Chief Justice, and may it please the Court, but for counsel's error, defendant would have insisted on going to trial. That is the test for prejudice. But in Mr. Frye's case, that test was not met. The truth is, despite counsel's error, Mr. Frye knowingly waived his right to trial and solemnly admitted his guilt. Under both Hill and Primo, Mr. Frye has failed to show prejudice, and therefore his guilty plea remains voluntary, intelligent, and final. Mr. Frye may not assert ineffective assistance by alleging that, but for counsel's error, he could have gotten a better deal on an earlier date. That is not the standard, and the Court of Appeals should be reversed. Sotomayor Counsel, sometimes one's experience has to be challenged. I, for one, have never heard of a case in which parties are discussing a plea, except in the most unusual of circumstances, and they advance a court date to enter the plea. In most cases, they just wait until the court date and tell the judge, I'm ready to plead guilty. This is such an unusual case because the plea happens on day one, the courts below is assuming that between day one and day five, or three or four, the guy would have come in and pled guilty, would have advanced the later court date? Well, the plea occurred on March 3, 2008. No, that's the second plea. Right. The plea offer expired on December 28, 2007, I believe. He commits the crime on the 29th or the 30th. He commits a second offense on the 29th or 30th. Actually, it was a fifth offense, but yes. All right. My point is, how reasonable could it be for the – for a court to assume that the plea offer had been made and that he would have taken it before the January court date that was set? It would be less than likely, but not impossible, I would say. And it would depend on a myriad of circumstances, many of which are as – as it could be just dependent on the defense counsel's own personal schedule. But the scheduling of a plea once – once an agreement has been made between a prosecutor and a defense counsel, the scheduling of a plea, I think, is largely a basis of convenience and does not necessarily – is not necessarily based on the preliminary hearing date or any future schedule. Well, I suppose the defendant might think, you know, there is really bad evidence out there that they don't have yet, and if I – I want to nail this deal down as soon as possible. I mean, that would be a reason to – to move things up and get the plea in early, wouldn't it? It could be. I would say that that is a possible. I mean, I don't know how often that happens. I don't – right. But it's also exactly another reason to keep the discretion of offering these plea bargains and the ability to take these plea bargains back solely in the hands of the prosecutors of the country. I'm really puzzled by what, as a practical matter, is at stake in this case. Under the State court decision, the defendant has the option of either pleading guilty to the charge, in which case he will be right back where he is now, or he can insist on a trial. And if he insists on a trial, you need to prove that he was driving with a revoked license. That seems to me, if there ever was a slam-dunk trial, that seems to me that's the slam-dunk trial. You introduce the records of showing that his license was revoked, and you have the officer testify on such-and-such a date he was driving. So I don't really see what is involved in this case. I don't see what is at stake here. I don't see that, as a practical matter, this seems to me to be a case about nothing. Am I wrong? Am I missing something? As a former prosecutor, as a former prosecutor myself, I would agree with this. This gentleman went into court, he had two options before him. There was not a third option. The plea that was, that left reality on December 28th was not there on March 3rd. He had a binary choice between two options on March 3rd. He chose not trial. By choosing not trial, it leaves us without a situation where either Hill or Primo prejudice can be shown. But we take the case on the assumption that he hadn't heard of the earlier better offer. Am I wrong about that? In this case, the defendant was unaware of the earlier better offer. That is correct. But in this case also, the defendant went out two days later and picked up a fifth charge. So one of the considerations that I think has to be left with the Court is that the plea offer is almost nil. This was his fifth arrest for driving under the code. Aren't we taking this on, isn't there an assumption that there's a finding or some lower court judge made a finding that if he'd known about the better deal that was offered, he would have taken it? That, what is in the record is that he would have taken the 90-day deal on the misdemeanor. Yes. But there's also an important element in the record that when he went in front of the judge, the penalty was given to the judge, which was 3 years in deferral and probation plus 10 days' shock time. The judge in Columbia, Missouri, gave the felony offer the back of his hand. And so while, yes, the record says that he picked it. Then that's a causal problem. You're saying that even if he had accepted it, it would have gone to the judge and the judge would have returned it down anyway. The judge wouldn't have accepted it. If the judge. Is that your point? Yes, Your Honor. Well, then there's a ---- somebody must have found somewhere that this made a difference. That the failure to tell him about the special offer of the misdemeanor did, in fact, make a difference because he would have accepted it and he would have ended up with it. Well, and that is the problem that brings us here today. The Missouri Court of Appeals said that. Yes. Through a misinterpretation, we believe, of the Strickland standard and, more importantly, a misreading of where Hill and Primo takes us. CERT was granted on this case just at the same time that Primo was very clearly re-articulating the Hill standard. And so the Court of Appeals had gone back towards Strickland with a very broad reading, just as this Court was coming down with an opinion that very clearly re-articulated the Hill standard, the two-part performance and prejudice test. And that's what we are asking be reversed. Suppose he had snapped up this deal as soon as it was offered. By the time he appeared before the Court to enter a formal plea of guilty, would the Court have known that he had, in the interim, been arrested yet again for driving without a license? The Court probably would have known as a result of a pre-sentence investigation. And perhaps, more importantly, Your Honor, the prosecutor himself would have known about the second arrest and he would have withdrawn it. And if I may, it's not always, we've concentrated so far in the case before and today on subsequent criminal actions. You know, back home in Missouri, the criminal reporting system, we still use on five-part carbon paper that you've got to press hard with your pen to get down to the fifth page. It is also possible that the prosecutor learns at a subsequent date of a criminal history that is material that predates the plea offer. And so in both directions, it's important that prosecutors have full discretion to take these pleas back. Regardless, your legal position is that there is no basis for setting aside the plea if an earlier, better offer was not communicated. That's your legal position, right? My legal position is that a finding, a conviction was entered on March 3rd. He pled guilty. The question before the Court is what satisfies a standard by which we are going to unwind it. A Sixth Amendment violation would satisfy that standard. And if there was a Sixth Amendment violation, if the plea was truly involuntary, we would unwind it. But the search for a better deal that is antecedent to the events of March 3rd is not the Sixth Amendment violation that should begin unwinding 97 percent of the convictions in the case. If the plaintiff fails to communicate a favorable offer to the defendant, that's your position? No. Respectfully, Your Honor, that is not my position. My position is that ineffective assistance is a two-part test, that there was a performance breach in the failure to communicate. But once the performance breach is accepted, then it has to be run through the Hill standard to find whether prejudice has occurred, and then we would find a Sixth Amendment breach. But we do not get there logically because the offer did not exist after December 28th. Well, I didn't understand that to be your position. There is a statement in your brief that the question is whether plea negotiations that did not result in a guilty plea constitute a critical confrontation that gives the rise to effective assistance of counsel during such negotiations. So I thought your position was that so long as the plea negotiations don't result in a guilty plea, effective assistance of counsel doesn't even come into the equation. I — there's a question in — I mean, you can say yes or no. I mean, you can be trapped — retreat from that, I suppose. Is the question whether I believe that plea negotiations are a critical stage? When they do not result in a guilty plea. I believe they are not. I believe that plea negotiations are not a critical stage under the laws of this Court. That's what we took the case for. We didn't take the case — we wouldn't have taken the case if we were concerned about what happened on March and what happened in February. We took the case because of your position. This is not a Sixth Amendment violation in these circumstances. I do not. There is a factual question as to whether or not plea negotiations in this case really ever engaged when all that ever occurred was the prosecutor sent a letter to the defense attorney. Only in the most technical of readings is that engaged. Yeah, but we don't care about that. What do we care about that? I mean, we don't take cases to figure out those — those, you know, picky, picky, factual questions. The issue that I thought was important here is whether this is a critical stage. When the defendant does not accept the plea and plead guilty. Plea negotiations, I don't believe, are a critical stage, because the fate in the back and forth between a prosecutor and a defense attorney, the fate of the accused is not set. And these — of course, these negotiations can take place over a very long time. Either party can get up from the table and walk away at any time. And then, perhaps most importantly, the — the dialogue of the negotiations are not used against the defendant at critical stages, which would contrast it, I suppose, with a Miranda situation and a custodial interrogation where that would be a critical stage. And if it were a critical stage, I suppose that counsel would be ineffective not only if he was a lousy lawyer and didn't know the law, but if he was a bad negotiator. I mean, right? Being a good criminal lawyer means you've got to be a good horse trader, right? I agree that that would be one of the extensions if critical stage and how it was described would be good. You tell them to turn down a deal that, in fact, you know, was a pretty good deal. That would be ineffective assistance of counsel. So you must — you must know how to handle yourself in the used car lot, right? I understand that that would be one of the ramifications. This is, I think, a basic question. It's very odd for you to say to me that this is not a critical stage. If it results in a guilty plea and the attorney has not done sufficient research to uncover a defense, it can be set aside then. So it's a — so you're saying it's not a critical stage depending on what the end result is. That's very difficult. I thought we were going to tell attorneys you have an obligation during the plea bargain process to use professional competence. And you say, well, you do or you don't. That doesn't make much sense. My understanding, Your Honor, is that attorneys are guaranteed to be accused at critical stages such as arraignments, plea hearings, trials. But then there is an implied guarantee that comes with that critical stage. And that implied guarantee is that the attorney appointed will do research analysis and preparation that prepares him for the critical stage. But when David Boies is sitting home on a Saturday night with a file open in his lap preparing for a case on Monday, that moment is not a critical stage of trial on a Saturday night in his den, but it prepares for — it is precedent to a critical stage. And the failure to engage in that preparation analysis can lead to performance and prejudice at critical stages. But it itself is not. Breyer. The question — I make a counter-assumption. The problem that I have a feeling that I would like you and the others to comment on is that you are worried deeply about a practical problem, and that the practical problem is that it would be too easy, as just was suggested by the question, to find that the lawyer, after the defendant is convicted, did a bad job during the plea negotiation, in which case everybody will get two or three bites at the apple. And one of the reasons for that is every brief has been lifting the standards, particularly in respect to prejudice, from Hill, which was addressing a different question. It was addressing the question of missed bad performance by the lawyer at trial. And that's hard to track what the effects are, and it isn't that hard to say the trial was unfair, give him a new one. That won't work here, I don't think. So suppose what we did, instead of saying there was no right, you simply said you have to prove with some certainty, work out a standard, that there really was inadequate assistance during the plea bargaining, and you have to show something more than a reasonable probability that this would have led to the plea, et cetera, you have to show that it would have happened, or you have a — in other words, you have two tougher standards for this area, but you don't reject the idea of inadequate assistance of counsel during the plea bargaining stage. I'd like people's views insofar as they're willing to give them on that question. Ineffective assistance of counsel is a term of art, and it is a two-part test. I believe that there can be performance breaches that occur between — at the plea bargaining stage, but that prejudice does not occur until we return to a critical stage, which is when that — when that plea — when the product of that plea negotiation is returned to a critical stage, and then it has critical stage protections over it where the judge is there and there's an allocution and the rest of the — JUSTICE GINSBURG Well, the open plea that was made, that's a critical stage, that he took a plea. But he, I think, has a plausible argument that the plea he made, the open plea, with no bargain in the picture, that that plea was not intelligently made because he didn't know that there had been an offer for him to plead to a misdemeanor rather than a felony. JUSTICE ALITO May I? JUSTICE GINSBURG Yes. In Tollett v. Henderson, the question of the defendant, Mr. Henderson's knowing waiver in that case, where the breach was infinitely more egregious in my view, which was the 1948 court packing that occurred and the African-American citizens were excluded from that grand jury pool. Mr. Henderson's lack of knowledge about a previous constitutional deprivation did not make his waiver unknowing. Same was the analysis in McMahon and in Parker and in Brady. To say there is no limiting principle that will allow this omission to unwind the knowing quality of Mr. Frye's waiver and then not open up the floodgates to all sorts of pre-constitutional deprivations, I'd like to reserve the balance of my time. Thank you, counsel. Mr. Yang. Mr. Chief Justice, and may it please the Court, when a defendant pleads guilty Are you taking the same position your, I don't want to call them co-counsel, Petitioner's counsel is taking, that you're not entitled to an attorney at plea bargaining unless you waive your, unless you waive your right to a trial? No, we're not. We are not taking the view. In this case, the alleged deficiency is not really an interaction between the prosecution and the defense counsel in plea bargaining. The alleged deficiency is a failure to inform the defendant of things the defendant would want to know as going forward, and we are willing to assume the defendant has a right to be properly informed by counsel, but with any Strickland claim, the relevant inquiry is whether or not the defendant has shown cognizable prejudice as a result of a deficient performance by the counsel. And when a defendant pleads guilty in open court, the conviction rests on the defendant's consent to enter a judgment of conviction entered without trial. And because the conviction rests on a consent judgment, it wipes free antecedent constitutional errors. The one challenge that is the question. Kagan. So I think, Mr. Yang, what Justice Sotomayor was suggesting is that your position does in fact require you to say that if there were no counsel at all in the proceedings, that would be perfectly at, you know, there would not be a constitutional problem with that. Once he pleads guilty, it just wipes away the fact that no counsel has been appointed for him. Yang. A guilty plea wipes free all kinds of constitutional violations that went before. Scalia. No, but the guilty, I mean, no, the reason that is not true is that the guilty plea must be entered with advice of counsel. You acknowledge that. Correct. And the guilty plea. So the guilty plea doesn't erase everything if it's been entered without advice of counsel. Correct. When the counsel guilty plea is entered, this Court has held that the one remaining challenge that would be allowed is the challenge to the knowing and intelligent waiver of the right to trial, which is what the guilty plea is. Now, in order to show that you were prejudiced. So does that mean, Mr. Yang, the State could set up a system where it says we're going to do all our negotiating with the defendant with no counsel present in the room? But we're going to keep a lawyer on board and just in the courtroom to advise him whether he should plead, you know, to advise him about the plea that he struck, even though he struck this plea with no counsel in the room, and that would be perfectly okay? We're not saying that. All the negotiations would be uncounseled. We are not taking the position that States can deprive counsel or deprive counsel from participation in the guilty plea process. But what we are saying. Well, I don't understand how you can say that. It seems you are saying that because you're saying that in the end the guilty plea wipes all constitutional error away. Just as we're not saying that there can be coerced confessions, not just like we're saying that a statute can impermissibly burden the right to trial by putting a death sentence on contingent that's available only when you go to trial, we're not saying any of that is allowed. But what we are saying is when a — and that was the Brady trilogy, Brady and then Hill, what the Court recognized is when you plead guilty in open court, you are waiving your right to trial. And the relevant inquiry, the only inquiry, once the defendant has admitted guilt, is to determine whether or not the waiver of the trial rights were knowing and voluntary. And the reason that that is a relevant inquiry is because you have a constitutional right to trial. And due process requires that the waiver of those trial rights be knowing, intelligent and voluntary. And in Hill, the Court confronted the question and said, you need to show deficient advice in the context of pleading guilty. And in addition, you need to show that that prejudiced you because absent — if you had received proper advice, you would have actually not waived your right to trial, you would have asserted your right to trial and gone to trial. That's the standard that applies. Kennedy. Kennedy. If defense counsel gives wrong information to the defendant about witnesses that can testify on his behalf and so forth, very bad legal advice, that can be ground for setting aside the plea, correct? It can. And because what's relevant — And that's because counsel, pre the entry of the plea, did not adequately advise his client. Right. Right. Right. Why is there no problem when he doesn't adequately advise a client of earlier, better offers? It's a different prejudice. When you plead guilty and your counsel has advised you wrongly in a way that would have changed your mind about the merits of going forward on trial, you can show that the waiver of the trial right is something that was prejudiced. But because had you known, had you been properly advised, you would have exercised the whole panoply of rights that the Constitution provides one who goes to trial. Not only a right to a trial by jury, but all of the trial rights that go with it. But when you instead plead guilty in open court, and the claim here is not that the defendant would have exercised his rights to trial. The claim is he would have waived his rights to trial either way. That is not prejudice to the that would overcome the guilty plea, which, again, rests on. Kagan. Well, Mr. Yang, there are different kinds of unfairness. One kind of unfairness is when you're badly advised, and you therefore waive your right to trial, and you would have gone. But there's another kind of prejudice, which is, you know, you and ten other guys are all in the same situation. And those ten other guys come up with a favorable plea deal because their lawyers are paying attention. And you come up with an unfavorable plea deal because your lawyer has fallen asleep. And to the extent that we have an effective assistance right that means something, that unfairness needs to be addressed by it, doesn't it? Well, when, again, once – whether or not there was a prior error, once you plead guilty, the question is not whether there were other deals on the table. The question is whether that waiver was. Well, I guess that's the question. Why isn't that the question? Right. But if it were the question, it would call into – this Court, in going back to Brady and then in Boykin, explained that what's the relevant question when you enter a guilty plea is whether you have waived your rights to trial validly. And, in fact, that has to be spread upon the record. Rule 11b has now been modified by this Court to go through the things you have to check to make sure that that waiver of your trial rights are knowing and voluntary. What we have here is not anything associated with the waiver of trial rights. What really the defendant is claiming is some entitlement to be able to take another deal that would not have resulted in trial. But that is not relevant to the waiver of trial rights. That would be recognizing another type of right. But this Court has repeatedly held that there is no right to a guilty plea, there is no right to plea bargaining. Once you have a plea agreement, there is no right to enforcement. The only rights that come into play is when that guilty plea is rendered into a judgment. And when you don't get there, but instead you plead guilty and you have waived your rights to trial, you have consented to the entry of judgment, and even if you had received better advice, you would have consented to the – you would not have gone forward to trial. You have – the basis on which the conviction rests remains valid. And that's what the Court has said. Scalia, you admitted that you got what you deserved, right? Precisely. And this Court in PRIMO addressed the exact same question. In PRIMO, there was a contention that had counsel done better before by filing a motion to suppress, would have been in a better position to secure a better plea agreement from the prosecution. But the Court concluded that, no, the relevant inquiry, once you have pled guilty, is whether or not you would have, if properly advised, insisted on your trial rights  That's the standard set forth in Hill. Ginsburg. Mr. Yang, in your view, is there any situation in which a defendant could regain a plea opportunity that he lost due to counsel's conceded inadequacy, and I think it is accepted that not telling him of the plea offer was ineffective representation. Is there any case where the defendant could regain the plea opportunity that he lost If he pleads guilty? Yes. If he doesn't seek a trial, right? I'm sorry, I didn't catch that. Yes. If he doesn't want to go to trial, but he's going to plead guilty, is there any circumstance where he could regain that lost opportunity? If he has pleaded guilty and he validly waived his rights to trial, because he would  And the judgment, which must be set aside, remember, we have to set aside the judgment. The judgment rests on the admission of guilt and the waiver of trial. The judgment cannot be set aside at that point, because this Court has long recognized the special force of finality with respect to guilty pleas. That's because, for several reasons. First, guilty pleas are an important part of the system. And it would be both delay and impair the orderly administration of justice. Any time we open another avenue to challenge guilty pleas. But, two, once the defendant has stood up in open court and admitted guilt, there is almost no risk of error, and the defendant has gotten the proper sentence and the proper conviction. Thank you, counsel. Thank you. Mr. Kuehner. Mr. Chief Justice, and may it please the Court. Galen Fry entered a plea of guilty to felony driving while revoked and was sentenced to three years in prison. His trial lawyer failed to inform him that the prosecutor was willing to allow him to accept a plea offer to a misdemeanor charge and recommend 90 days in jail. Fundamental fairness and reliability of criminal process requires that an attorney provide his client information regarding matters in his case. Why? Why is it unfair for the law to apply to this individual the punishment he deserved for the crime that he committed? I mean, the object of the system is to put – is to punish people who commit crimes in a certain degree. And here he admitted he did the crime and he got the degree of punishment that the law provides. What could be more fair than that? Fairness includes a whole range of sentencing options, and in this case the prosecutor was making a determination of what was fair in this case when he made the offer. Ex ante, I suppose you could say that, but when you look at it later, it's clear that that would have been unfair. In fact, this individual was perfectly willing to admit that he had been guilty of more than what the prosecutor had offered. Part of the consideration that a defendant has to make during the plea bargaining process or plea negotiation process is determining the liability that he's willing to accept in entering a plea of guilty. That's true, and he did that when he entered the plea of guilty. You do not contest that he was well advised when he entered that plea, that it was knowledgeable, and he admitted that that's what he had done and was willing to accept the degree of punishment prescribed by law. He was – the guilty plea in terms of what he was admitting to, he was willing to and had to agree that he had committed the crime of driving while revoked. But the plea was open in terms of sentencing. He was allowed to argue for something lower than sentencing. He only knew that was the available options at that time. He wasn't aware that the prosecutor had made available an option to him to limit his exposure for that offense to 90 days. Sotomayor, I have a two-part question. Okay. All right. What exactly made his plea unknowing or involuntary, number one? And number two, identify the right he was deprived of, substantive or procedural, by his attorney's failure to communicate the plea. The plea was unknowing and involuntary because he was not made aware by his counsel's all of the circumstances available to him, the consequences of entering that guilty plea, that would have included the 90-day on a misdemeanor. Alito, he was not aware of that. Alito, suppose he had been told that and the prosecutor said, well, yeah, that's true, I made that offer, but it's off the table now. And apparently this was then off the table. So what good would it have done him to know about something that happened in the past but was no longer available? Well, this offer was only no longer on the table at the time he entered the plea of guilty because it had expired and that was a result of counsel's ineffectiveness in failing to communicate that to him. The lower court, the court of appeals, made a finding that this offer was available and he could have taken advantage of it before it expired, and that was a finding by the court below. Now, I understand that, and it may have been unfair, but I don't see why it's involuntary, because I don't see that advising him that he had an option at some point in the past which was no longer available really doesn't have much of a – doesn't have any bearing on the voluntariness of his plea to a later, less favorable offer. I don't – that's – it seems to me that that's involuntary in the sense that he didn't know it then. It's not that it's involuntary now because that he knows it. It was involuntary because he didn't know it then. Kennedy Well, suppose a case in which a plea offer is made, not communicated, and expires. Then there's a guilty plea hearing, and he doesn't, and the defendant enters a guilty plea but doesn't know about the prior offer. Is there injury? There is an increase in sentence, and that's the situation here. Is the plea involuntary? Pardon me. Is it unknowing? It is unknowing. What would he have done had he known? I mean, it's unknowing in the sense that he did not know the full consequence. Kennedy I'm really sorry. I didn't accept responsibility three months earlier. Kagan What he – what's unknowing about that is the potential consequence that he is choosing in deciding to plead guilty. And if I may, that's the second part of your question. The right that he has is the right to make fundamental decisions in his case, one of which is to accept a plea bargain. And to plead guilty. Scalia Doesn't the rule that the plea offer may be withdrawn at any time by the prosecutor, indeed, even after it has been accepted, doesn't that well enough establish that there is no right to profit from that plea offer, that there is no constitutional right he's been deprived of, given that the prosecutor can withdraw it even after he accepts it? Kagan That can be with – excuse me, that can be with – excuse me, that can be withdrawn at any time by the prosecutor, but we're not arguing that there is a right to a particular plea, a particular plea. He's entitled to the right to make a knowing and voluntary acceptance of a plea, a knowing and voluntary guilty plea, and that requires that he know all of the information. The record that we have in this case, there's nothing to suggest that that plea would not have gone forward. The mere potentiality for withdrawing the plea. Scalia I had hoped you were making some argument other than the knowing argument, because as prior discussion has shown, even if he had known, it would have made no difference to whether he accepted the later plea. Suppose he had been told, oh, by the way, there was an earlier plea, it's too late to accept it now, do you want to take this plea? He says, oh, I'd like the earlier – I'm sorry, the earlier plea is gone. Do you want to take this plea or not? He would have taken it. What does the knowledge of the earlier lapsed plea have to do with whether his guilty plea is knowing and voluntary? It doesn't seem to me to have anything to do with that. So I thought you had some other argument that there was somehow a right to profit from the earlier offer, and I find it hard to see that right, given that the prosecutor can withdraw the offer and indeed even withdraw it after it's accepted. The right is to enter that plea knowing the full consequences of what he's doing at that point, which includes the limitation on his exposure for the offense. This is sort of a sentencing issue, and an increase in sentence is prejudicial. But the Missouri Supreme Court said that the prosecutor, they would not order the prosecutor to renew that earlier plea. So they said the options were you can get a new trial, you can get a trial, or you can replead the open plea. But wasn't it – didn't the Court say we will not order the prosecutor to reinstate the earlier offer? That is correct, Your Honor. Their finding more specifically, I think, was that they did not feel like they were empowered to do so. We certainly believe that they can – they are empowered to do so in the sense that this is a remedy provided for a constitutional violation. What about as a constitutional violation, that in a context of a world where 95 percent of all people in prison are there as a result of bargaining and guilty pleas arranged with prosecutors, in that context it's fundamentally unfair to deprive a person of his liberty for 40 years instead of 6 months, because the lawyer, which he is guaranteed, fell down on the basic, fundamental, obvious duty of communicating the relevant plea agreement. I agree with you completely, Your Honor. I know you do. Is there any support for me? That is the issue where, in terms of the sentencing outcome, this is knowledge that he is required to – it's required by his attorney to provide him a sentencing of difference is a – is prejudicial, excuse me, under Strickland. And the remedy for, I guess, going back in even more basic than that, is that that ineffective assistance of counsel is – has to be remedied. But if that's ineffective assistance of counsel, surely it is ineffective assistance of counsel to advise him to turn down an offer that he should have snapped up. Isn't that ineffective assistance as well, if it's absolutely clear that this was a great deal, and the lawyer says, you shouldn't take it? Is that ineffective assistance or not? I'm going to have to couch that in terms of saying it would depend on the circumstances, what you have to understand. I gave you the circumstances. It's clearly a super deal. Any good lawyer would have told him to take it. And this lawyer says, don't take it. Is that ineffective assistance? That would probably not be ineffective assistance. It would not be. The question would then be whether or not there is prejudice from that. No, it would be ineffective assistance, and the question would be prejudice. Is that it? I think an attorney can provide reasonable representation in making that sort of an offer. Give me a yes or no to the question whether, if every reasonable lawyer would have to snap up this offer, but his counsel tells him, no, turn it down, yes or no, is that ineffective assistance? In that circumstance, it is ineffective assistance, because he has to do what is a reasonable standard of representation. Then we're in the soup. Then we're in the soup, because every one of these pleas is subject to the contention that, oh, there was an earlier plea or I should have taken it. But, I mean, and I suppose that if he goes to trial, then you would also say the trial should not have occurred, because it was the ineffective assistance of counsel that caused him to turn down the plea, and therefore we're going to, right, retry, set aside the trial. Under that circumstance, that would may well be the case. Now, you've read these cases, and now we're right on what I think is the point, because we've both defined a possible constitutional right, but there's a practical problem. All right. Now, the States and others have dealt with this on your side for the last 30 years, and presumably you, but not me, have read a lot more cases. Now, have they developed, as you look across those cases, are there some States or places that have developed reasonably tough standards in respect to what counts as ineffective assistance and in respect to whether it made a difference that would help to alleviate the concern that this would turn into a great mess, which it hasn't, apparently? As I understand these cases, the standards being applied are the Strickland standard. It's the high bar of deficient performance and prejudice under Strickland. And the lower part is due to the lower part. So, too, that's not much comfort in terms of what the consequences of a decision in your favor would be. I mean, that's certainly true. I mean, reasonably. Alito, where the case goes to trial, prejudice isn't going to be very hard to prove. A person turned down a 5-year deal and gets and after trial is sentenced to 20 years. So you've got prejudice right there, right? Right. So there's always going to be a very good argument for prejudice, where the person turns down a favorable deal and then gets slammed after a trial. I'm going to qualify my answer a little bit. I think where what the Court has to keep in mind is the rational decision requirement that I think was reiterated in Padilla. You're going to have to look at whether or not the defendant was making a rational decision in that choice. It's not simply that there was another offer out there. It was the decision rational on the part of the defendant to accept or reject that offer that was there. Alito, the point is just that prejudice isn't going to be very tough to show, is it? Turn down a 1-year deal and then later, when that was off the table, you accepted a 5-year deal. That may well be the easier part of the equation, but there's still going to be. Breyer, if you're going to show a causal connection, so you'd have to show, in showing the causal connection, that he would have taken that deal. That's, yes. And if you're going to use the words reasonable probability that it would have taken, it might be fairly easy to show. And that's where in the back of my mind I'm thinking of maybe we want something tougher than reasonable probability, that you have to show that it really would have made a difference. I think reasonable probability is a workable standard that we've used for many years. You are leaving out of the picture the prosecutor's prerogative to withdraw his plea. You said that the Court said it lacked authority to order the State to offer any bargain. But also the Court said, I'm not going to require the prosecutor to renew an earlier offer. One thing is clear in this case. The prosecutor did nothing wrong. The wrong was on the part of defense counsel. So why should the judge disarm the prosecutor, take away the prosecutor's right to change his mind? The um, this is a remedy for the Sixth Amendment violation, and that is to put the defendant back into the position as nearly as possible as he would have been in at the time. And at the time the offer was open, this is not a situation where the prosecutor is being ordered initially or the first instance to make an offer. It's, this is being viewed as the offer that was originally made is still available and open to the defendant. Yeah, but at the time, that offer could have been withdrawn by the prosecutor. And you're saying now it can't be withdrawn. So you're really not putting him back in the situation he was in. There's, there's never going to be a perfect remedy for any of these violations, I don't believe. I think that's right. And that's one of the things that causes us to be suspicious of whether there's a constitutional violation. Because there really isn't any perfect remedy. There can't be a perfect. In some cases, not even a close to perfect remedy. I think this is close to perfect, as close to perfect as we can get, which is what is required for Sixth Amendment remedies, that it mitigate it to the extent possible. And in those circumstances where one party, the interests of one party may be infringed upon, if that happened, they can't be infringed upon unnecessarily. This is a necessary infringement. The State bears the burden of ineffective assistance of counsel. And if that's in an erroneous sentencing, then the State has to bear the burden for the erroneous sentencing. On the issue of Rep. Roberts, I'll go at this time. Counsel, on page 24 of your brief, you quote Alford for the proposition that a valid plea must be a voluntary and intelligent choice among the alternative courses of action open to the defendant. On the next page, you say when Frye entered his guilty plea before the trial court, he was completely unaware that counsel's ineffective delay had forever foreclosed those options. Now, I put the two of those together and find you saying that this was a valid plea. The question of validity is whether it's an intelligent choice, as you quote, among the alternative choices of action open to the defendant. The next page, you say these options had forever been foreclosed, so they weren't open to the defendant. Well, those were foreclosed simply as a result of trial counsel's ineffectiveness, which caused him to be unaware that they had been ever available to him. So that's how the plea becomes involuntary, is not that he's aware of what the situation is at the time that he's entering the plea, because there are many other circumstances that go into his decision of whether or not to enter a plea. Those alternatives were only no longer available to him as a result of counsel's failure to perform his duty professionally and communicate the offer. Alito, on the issue of remedy, as the Respondent, are you not limited to the remedies that were provided in the judgment of the State court? No, I don't believe so, because the State court, the court of appeals simply thought it was not empowered to put him back in the position that he was in, and I think that is the remedy under the Sixth Amendment. But you didn't file a cross petition, and there wasn't one granted. So aren't you limited to defending the judgment below? Can you ask for a modification of the judgment below in your favor? With the second point in the case is what is the appropriate remedy? And that's a question that the court raised. Yes. So the court was expecting you to address it. But we did file the petition challenging the finding of the relief provided by the court below. Do you think that because we added a question that acts as the functional equivalent of a granted cross petition that would permit a modification of the judgment in your favor? No, but the last I recalled that cert petition was still pending. I may be wrong about that. I'm not sure that it was just into this case. Are you recognizing that the remedy that the Missouri Supreme Court did give was a futile remedy, that is, to plead guilty, to have another open plea, or trial, because this defendant apparently doesn't want to go to trial? I think both of those are futile remedies, and that's why it's really obvious that the remedy has to be something else. This is not a situation where he does have a very like — a very good likelihood of succeeding at trial. That's not going to do him any good. That won't give him a misdemeanor where he'll be sentenced to 90 days. The open plea is basically the same — the very same thing that's causing him the prejudice in this case. So the remedy being provided by the Missouri Court of Appeals is essentially no remedy at all for the prejudice that he suffered. But why should — now that we know what the judge's sentence was, and part of the part about what is it, 3 years with 10 days in jail, and the judge said, no, I'm not going to give him just 10 days. I'm going to put him in jail for the whole 3 years. Now, if that's the sentence that the judge gave, he rejected the half of the plea bargain, so surely he would have rejected the more generous one. I'm not sure that's entirely the only answer we can draw from this record. At the time that this guilty plea was being entered and the sentence was handed down, this was an open plea. It was not an agreement. If they had gone to court on a plea agreement between the prosecutor and the defense, and that was for an amendment down to a misdemeanor and a reduced charge, you know, that is something more definitive than the judge would be looking at what the parties had agreed to at that point. Scalia. I'm not sure I understand the difference between an open plea and a plea agreement. He just comes to the judge and says, I'm willing to plead to this without the prosecution having offered it? The open plea basically means there is not an agreement between the parties. Now, they may each know what the other party is going to argue for or recommend, but there's not an agreement between the parties. And I think that would leave the Court with a little more flexibility than he might otherwise exercise if they came to him with an agreement. Sotomayor. I thought the earlier, the November 15th letter agreement, always left it up to the judge whether to accept either the felony with shock treatment or the misdemeanor with 90 days. So the judge was always free to reject either of those two. I think the deference to the trial court on probation was in that first one, the three years with defer to the court on probation. If they had agreed on the 90 days and the misdemeanor, that would have been a plea agreement between the two parties. That would have been a definitive. Finding the judge? Not finding the judge. No, that would not find the judge. It never would. The judge would have the opportunity at that point. The only thing the judge would have discretion over at that point would be the actual amount of sentence. If the prosecutor reduced that from a felony to a misdemeanor, the judge couldn't reject that. He would have had to accept it. He would have had to accept it. He would not have had to accept the 90 days. He would not have had to accept the 90 days. What proof did you have in the record that the judge would have accepted the 90 days? I don't have proof in the record that he would have. What I have in the record, there is nothing in the record to suggest that that would not have happened. The appellate court found, in fact, by making the determination that Mr. Frye was prejudiced necessarily made the conclusion that that plea would have gone forward. The motion court said nothing to refute that. There was nothing in the court's findings that the court would not have accepted that agreement had the parties come before it with that. If there are no further questions. Thank you, counsel. General Costner, you have two minutes remaining. Thank you, Your Honor. Two of the Justice's questions raised the concept of sentencing equivalency. And certainly sentencing equivalency is an important goal, both at the Federal system and we've tried it at the State system. But sentencing equivalency is not an avenue that the Sixth Amendment is intending to reach. The central question here, Justice Breyer's earlier question that I think I didn't answer properly, is should we begin unwinding these convictions in search of lost plea opportunities? I think that we should not. It undermines the long discussions in both Hill and Primo about the importance of the finality of these and our being able to rely on the finality of these decisions. There's mutual reliance, there's State reliance as well, because when these offers are made, the State does not interview witnesses, the State does not send evidence to the lab, the State does not, you know, sometimes even get to the point where the charges are made. So there's State reliance, which is synonymous with a reliance of justice on the finality of these agreements as well. And also the search for these lost opportunities that Mr. Frye is asking this Court to lead us toward takes a pointed representation beyond the limited scope that the Sixth Amendment in Gonzales v. Lopez and other courts, the limitation of the Sixth Amendment, has always appropriately articulated. For this and other reasons stated in our briefing, the Missouri Court of Appeals should be reversed. Thank you. Thank you, Counsel. The case is submitted.